## COUNTIES OF WASHINGTON, KENT, AND NEWPORT, DURING THE FALL CIRCUIT, 1873.

PRESENT :

Hon. GEORGE A. BRAYTON, CHIEF JUSTICE.
Hon. THOMAS DURFEE, } JUSTICES.
Hon. ELISHA R. POTTER, }

## WASHINGTON COUNTY, AUGUST TERM, 1873.

JOHN H. CASWELL *vs.* THOMAS T. HAZARD, Town Treasurer.

A town is bound under the provisions of General Statutes, chap. 65, not only to relieve and support all poor and indigent persons lawfully settled in such town, but also to afford temporary relief to such persons having no settlement there; but a town is not liable to an individual for the expense of relief furnished by him to such a person without the request of the overseers of the poor, although she became sick and needed immediate help before the overseers could be applied to.

ASSUMPSIT to recover the value of supplies and relief furnished a transient pauper, under circumstances which are stated in the opinion of the court.

*Hazard & E. C. Clark*, for the plaintiff, cited *Sturbridge* v.

*Holland*, 11 Pick. 459; Rev. Stat. chap. 150, § 1; *Worden* v. *Leyden*, 10 Pick. 24; Rev. Stat. chap. 30, § 12; *Mitchell* v. *Cornville*, 12 Mass. 333; *Miller* v. *Somerset*, 14 Mass. 396; *Kittredge* v. *Newbury*, 14 Mass. 448.

*Congdon*, for the defendant, cited Rev. Stat. chap. 50, § 4.

BRAYTON, C. J. Caswell, the plaintiff, has brought this action against Thomas A. Hazard, town treasurer of the town of South Kingstown, to recover against said town for supplies and relief furnished for one Sarah Glenon, a transient person and a pauper, taken sick at plaintiff's house and cared for by him, and he counts upon the promise of the town to repay him for the relief thus furnished.

The case was submitted to the court upon both law and fact, the jury trial having been waived.

The facts, as they appeared in evidence, and so far as they are necessary to raise the questions of law made by the parties, were, that the pauper, Sarah Glenon, who had formerly been in the plaintiff's employ, but who had been, during the watering season, in the employ of another person, being about to return to her home in New York, came to his house on the evening of October 12, 1870, to see the family and to take leave of them. She remained there all night, and, falling sick in the night, became too ill to be removed, and so remained there for several weeks, and until she so far recovered as to be able to leave for home. About twelve days after she was taken sick the plaintiff notified Armstrong, one of the overseers of the poor, that she was at his (plaintiff's) house, too sick to be removed, and needed to be provided for and nursed, having no means of her own; that she was an Irish woman, and belonged in New York, and desired Armstrong to make some provision for her. Armstrong replied that he did not know as he had anything to do with the matter in such a case, but that if he had any power to do anything about it, he would do all that he could, or would do what was right about it. He, however, did nothing, made no request of the plaintiff to do anything for the pauper's relief, or for him, Armstrong, nor did he request the plaintiff to employ any of the persons then or afterwards employed by him.

The plaintiff, after the recovery of the pauper, was encouraged to hope that the expenses incurred would be paid by her friends

in New York, and made out and forwarded his bill there, but it was not paid. He then asked the overseer, Armstrong, if he should make his bill against him, the overseer, or against the town. Receiving no definite answer, he finally presented it for payment to the town council, who refused to pay.

The plaintiff claims that the overseer, Armstrong, promised to pay for what he might furnish for the pauper's relief, or that he requested him to provide for her. We think the evidence fails to show any promise on the part of Armstrong to pay for anything. The plaintiff was not requested to make any provision, to employ any person, physician, or nurse. On the contrary, the overseer intimated that it was not his duty to do anything about it, but if it was, he would do what he could, and would do what was right. There was nothing in Armstrong's language from which to imply any promise by him or any request to provide.

But the plaintiff claims that there was a promise of the town to be implied from the facts that it was their duty to provide for this indigent person; that they wholly neglected and refused to make any provision; and that the plaintiff had discharged their duty by making the provision which he had at his own cost and charge, and relieving them.

The statute clearly imposed upon the town the duty to relieve and support all poor and indigent persons lawfully settled in such town, and to afford temporary relief to poor and indigent persons having no settlement there, and it is made the duty of the overseers of the poor to discharge this duty and to afford this relief, whether the need be permanent or temporary.

It was clearly the duty of the town to relieve this pauper, and the overseer might have provided the temporary relief required, and discharged the obligation of the town in that respect, though he seems to have had the impression that he had no authority to provide for other poor than those who were there settled, and that it did not extend to transient persons, how much soever they might stand in need, and so he declined to furnish any relief or to authorize another to provide any.

Will the law then, from these facts, raise a promise to the plaintiff to pay for the supplies furnished by him? The plaintiff refers us to no case which affirms it, and the cases cited by the de-

fendant abundantly show that no such promise can be implied, and that the duty is one enforced by the statute, no such liability existing at the common law. If the town fail to perform the duty, though it may be liable to a public prosecution, it is not made liable to any suit by an individual. The statute gives no such action. No one can assume to discharge the duty imposed upon another and bind him to the payment, whether it be a corporation or an individual. There are many duties imposed upon towns besides the support of the poor, and in some cases actions are given to those who may have received injury from the neglect of the town to comply with the statute. In none of these cases is an action given to one who is not thus injured, and who only assumes to do what the town ought by statute to have done. Towns are required to keep their highways safe and convenient. He who is injured in consequence of their negligence in this respect, by statute has an action, but no one can perform for them the duty of repairing without request, and charge them by action.

In *Miller* v. *The Inhabitants of Somerset*, 14 Mass. 396, the plaintiff, a surgeon, performed a surgical operation upon a pauper settled in Somerset, and supported by that town. There was no request by the town, or by the overseer, to perform it. The court said that though the town was liable by statute to provide for their poor, the statute gave no action against them for this. No action would lie at the common law against a town for support of the poor.

In *French* v. *Benton*, 44 N. H. 28, the suit was for medical attendance upon a pauper taken suddenly ill, and the services rendered before request could be made to the overseers. In this case it was claimed that the physician might charge the town, and that the rule of law would allow it; but the court said there is no such rule, and there is no case in support of such a rule; that no action can be sustained upon the legal duty of the town, and that the law implies no such promise. There are other cases to the same point, that no individual can recover upon any contract implied from the liability of the town. That the action must be given by the statute, or there must be a request to provide for the poor by the town or by the overseers, see *Mason* v. *Bristol*, 10 N. H. 36, and other cases cited by defendant.

In this case there was no request, and there is no statute giving this action, and

*Judgment must be for the defendant for his costs.*